UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK       15 CV 3787 (WFK)(PK)
--------------------------------------------------------X

R.A., M.K., and M.K., AS
THE FATHER AND NATURAL
GUARDIAN OF I.K. AND
R.K., INFANTS,

              Plaintiffs,

                                   FOURTH AMENDED COMPLAINT
                                   <u>AND DEMAND FOR A JURY TRIAL</u>

       -against-

THE CITY OF NEW YORK,
AND HAROLD AVALOS,
INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY,

              Defendants.

--------------------------------------------------------X

    1.  This is an action for compensatory and punitive damages for violation of Plaintiffs' rights under the Fourth, Fifth Amendments and Fourteenth Amendment to the Constitution of the United States by reason of the unlawful acts of defendants.

## <u>JURISDICTION</u>

    2.    This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is founded upon 28 U.S.C. § 1343. Venue is proper in this district under 28 U.S.C. § 1391(b) in that all claims arose in this district. Plaintiffs also brings pendent state law claims pursuant to 28 U.S.C. § 1367.

## <u>PARTIES</u>

    3.    Plaintiffs are residents of Queens County, New York City in New York State.

    4.    At all times hereinafter mentioned, the Defendant Police Officer was an employee of

the New York City Police Department (HEREINAFTER REFERRED TO AS "N.Y.P.D.") acting within the scope and authority of his employment. He is being sued individually and in his official capacity as a New York City Police Officer.

5. The Defendant CITY OF NEW YORK, (HEREINAFTER REFERRED TO AS "City"), was a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and as such maintained the New York City Police Department and employed the individual Defendants sued herein.

6. That upon information and belief the City was responsible for the training of its police officers.

7. That at all times herein the defendant, City, was negligent in the hiring, training, supervision, discipline, retention and promotion of the agents, servants and/or employees of the N.Y.P.D.

8. That at all times mentioned herein the Defendant, City, knew or should have known of the discriminatory nature, bad judgment, and unlawful propensities of the officer involved in the violation of civil rights of the Plaintiffs.

**FACTS**

9. On September 28, 2012, R.A.'s common-law husband M.K. called 911 because he and R.A. were having an argument and he wanted R.A. to leave the house.

10. When the police arrived at their home located at 70-19 45th Avenue, Woodside, New York, an officer named Harold Avalos entered the premises, took R.A. aside and comforted her.

11. Officer Avalos asked R.A. why a beautiful woman like her is with a guy like him, meaning M.K.

12. Officer Avalos told R.A. that she must go to Family Court to get an order of protection. He also gave R.A. his cell phone number and asked R.A. for a number for him to contact her. R.A. gave him her sister's phone number.

13.     The very next day Officer Avalos texted R.A.'s sister telling her to have R.A. call him back right away.

14.     R.A. called him back. He asked R.A., "Did you go to Family Court?" She said, "No. I don't want to go to Family Court." Then he said, "It is very important. You must go to Family Court." Then he said that he knew of a Punjabi man who had killed his wife and cut her into pieces after she failed to get an order of protection. His words scared R.A.

15.     R.A. followed his advice and went to Family Court and received an order of protection.

16.     A week later Officer Avalos told R.A. he wanted to come to her house because as her domestic violence officer he wanted to make sure she was okay.

17.     About a week after the 911 incident, Officer Avalos came to R.A.'s mother's house and he kept telling R.A. to get M.K. arrested. One day R.A. told him that M.K. had called her crying and begging for them to get back together.

18.     Officer Avalos told R.A. to get M.K. arrested for this call as it was made in violation of the order of protection.

19.     For the next couple of weeks R.A. spoke on a daily basis with officer Avalos, who was very kind and told her she could call him for help any time.

20.     Approximately one month after first meeting R.A., Officer Avalos called R.A. in the beginning of November 2012 and told her that M.K. had made a complaint and that she was going to be arrested. When he told her that, she got scared and anxious. He said, "Don't panic. I will take care of everything."

21. Officer Avalos told R.A. to meet with him so that he could help her get through Central Booking quicker. He said, "I need to do some paperwork and make some phone calls to get you out of Central Booking fast."

22.     Late at night on November 11, 2012, officer Avalos came to R.A.'s house and he convinced her to go with him to a motel supposedly just to talk. He told her the motel was best because he could not be seen with her as he was not supposed to be helping with her pending arrest.

23.     At the motel, he tried to kiss R.A. She pushed him away, and for the next couple of hours they just talked, at which time he cried to her that he understood her pain because the mother of his children had once had him arrested and he had been placed on desk duty as a result.

24.     A few days later R.A. was arrested for supposedly taking some items from M.K.'s home. Officer Avalos was the officer who took the complaint from M.K.. R.A. later learned that Officer Avalos had convinced M.K. to get R.A. arrested when he was serving a third-party order of protection on him which Officer Avalos had urged R.A. to get.

25.     Officer Avalos and R.A. continued to text and talk over the next few weeks.

26.     On R.A.'s birthday, December 3rd, 2012, Officer Avalos called R.A. and told her he wanted to take her out.

27.     R.A. agreed, and they went to a nearby bar, where he ordered many beers and he ordered R.A. about five shots of tequila. R.A. got very drunk and told him she wanted to go home. He said he would take her home, but that first they should get something to eat. The last thing R.A. remembers from that night is getting into a taxi with him.

28.     The next thing R.A. remembers is waking up in a room with no clothes on. Avalos didn't have any clothes on either. R.A. asked him "Where am I?" He said they were in a motel. R.A. said, "Why do I have no clothes on?" He said they had sex. R.A. was totally shocked and started to cry. She picked up her clothes from the floor and went into the bathroom where she saw vomit all over the place.

29.     R.A. was crying and told him she did not believe him that they had sex. He showed her naked pictures of herself and pictures of them having sex, and also told her he had taken a video.

30.     R.A. got even more upset and he told her to "you need to shut up". He said "if you say anything to anybody about this I will put your naked pictures and video on the internet and I will make you very famous. I will send the sex video to your kid's father."

31.     Over the next couple of weeks R.A. did not know what to do.  She did not tell anyone what had happened. She was deeply ashamed, embarrassed and scared.

32.     Officer Avalos and R.A. continued to text and talk. She kept asking him to delete the pictures and video, but he refused, saying that the pictures were so beautiful. He even had R.A.'s arrest photo on his phone which he also claimed was pretty. After December 3rd, 2012, he texted R.A. and included a picture of them having sex. R.A. deleted it right away.

33.     In March, 2013, R.A. agreed to meet with Officer Avalos because he said he would delete the photos. R.A. got into his Lamborghini and he promised her if she went to the motel he would delete the photos in front of her.

34.     R.A. was scared and did not know what to do, so she went with him. At the motel he refused to delete the photos and when she tried to walk out he grabbed her by the hair and had sex with her against her will.

35.     R.A. did not report this rape because she was very scared. On that date he had shown her pictures of other women that he has been with. Later on, R.A. recognized one of the women to be Levi Velez, a woman Avalos had met after she went to the precinct to make a domestic violence report.

36.     On that date he told R.A., "Listen to me very carefully. If you tell this to anyone, I know where you live, you have a mother, a sister, and you have kids. I always carry a gun and I will kill everyone and kill myself before I get arrested. You don't know how crazy I am."

37.     Over the next couple of months R.A. was emotionally distraught and depressed. She was having trouble taking care of her infant children R.K. and I.K.  R.A. also had difficulty

concentrating on her classes at LaGuardia Community College, so she withdrew from school.  R.A. had been hoping to enroll in a nursing program.

38.     In March, 2013, M.K. made a complaint about Officer Avalos coming to R.A.'s family's house based upon information provided by their nine year old son that Officer Avalos was drinking a beer in their house.

39.     In April, 2013, Officer Avalos called R.A. from a private number and told her that she might get a call from Internal Affairs ("IAB"). He said, "Do not tell them anything and don't say anything bad about me. Before you say any fucking thing to anybody think about yourself and your family, and you know what's going to happen." R.A. was very scared, so she did not tell Officer Nolan of IAB anything about what Officer Avalos had done to her.

40.     Finally, in October, 2013, after R.A. had lost custody of her two infant children, R.A. told M.K. that Officer Avalos had raped her.

41.     Then, on January 29, 2014, R.A. sought counseling for her depression. She saw Rita Lombardi, at Comprehensive Counseling.

42.     On February 5, 2014, R.A. went to see a psychiatrist, Dr. Yudmilla Davidov. She began treating R.A. for depression and anxiety. She prescribed anti-depressants and anti-anxiety medication which R.A. is still taking.

43.     R.A. never consented to have sex with Officer Avalos. The only reason she did not report him was she was very afraid. At first, he manipulated her into trusting him and then he blackmailed her into silence by threatening her and telling her he would kill her family.

44.     M.K. was arrested for allegedly violating an Order of Protections at the importuning of Officer Avalos, although M.K. had merely contacted R.A. to discuss getting back together.

45.     About ten days after M.K.'s arrest Officer Harold Avalos came to his house and served M.K. with a third-party order of protection. At that time, Officer Avalos told M.K. that "women are

bitches…you can't trust them…my own bitch got me in big trouble and they took my gun and shield away from me and put me behind the desk for eighteen months ". He suggested to M.K. that he should get R.A. arrested.

46.    M.K. told Officer Avalos that he thought R.A. had taken his passport and some jewelry from his house, but that he did not actually see her do it.

47.    Officer Avalos told M.K. that he must swear that he saw R.A. take the items or he could not have her arrested. At Avalos' urging, M.K. filed a complaint stating that he saw R.A. take the items.

48.    Avalos told M.K. to call 911, that he would be in the area, and he would return to take the complaint. M.K. called 911 a few minutes after Avalos left his house, and shortly thereafter he returned and took the complaint.

49.    R.A. told M.K. that Officer Avalos then used the fact that she was going to be arrested to scare her into seeing her on November 11, 2012.

50.    Later, M.K. verified that Harold Avalos took R.A. to the Boulevard Motel on November 11, 2012 by speaking to the motel clerk who provided M.K. with the registration card filled out by Officer Avalos.

51.    M.K. also verified through registration records that Officer Avalos had taken R.A. to that same motel under an assumed name on December 4, 2012 and at the end of March 2013.

52.    On March 24, 2013, M.K. learned from his son that Officer Avalos had been drinking beer at R.A.s house and he overheard him telling R.A. to get M.K. arrested.

53.    On March 24, 2013, M.K. contacted Internal Affairs Bureau ("IAB") and reported his concerns to them (IAB Log # 12270-2013).

54.    For the next couple of months M.K. made numerous reports to IAB, including an incident in July, 2013 where Officer Avalos threatened M.K. and told him, "You put complaints about

me. Nothing is going to happen to me. My PBA union is going to protect me. I feel like putting every bullet in your head…. By the way, I'm not f***ing her anymore." (IAB Log # 29846-2013).

55.     It was not until October, 2013 that M.K. first learned from R.A. that Officer Avalos had raped her. I told R.A. to report it to IAB which she did (IAB Log # 43986-2013).

56.     During this entire ordeal M.K. has been suffering severe mental stress, and has had difficulty concentrating, or figuring out how to proceed. To a great extent, M.K. was focused on taking care of his children and figuring out how to reestablish a relationship with R.A.

57.     In January, 2013, M.K. began psychiatric treatment to help him cope with this situation.

58.     On June 24, 2015, just prior to the commencement of an administrative hearing by Internal Affairs of the N.Y.P.D., Officer Avalos admitted to five charges against him, including lying three times to investigators of the N.Y.P.D.'s Internal Affairs Unit, having an inappropriate relationship with a member of the public, and improperly downgrading a police report for no legitimate purpose.

59.     At that time, he also agreed not to oppose being terminated as a police officer. A decision on whether he will be terminated is now before Police Commissioner Bratton.

## CONDITIONS PRECEDENT TO FILING STATE LAW CLAIMS

60.     On March 2, 2014, Plaintiffs filed a motion seeking leave to file a late notice of claim. Included within said motion were Proposed Verified Notices of Claim as to both R.A. and M.K.

61.     On October 21, 2015, the Appellate Division, Second Department reversed the denial of said motion and granted Plaintiffs leave to file the notices of claim.

62.     Accordingly, the Proposed Notices of Claim are considered to have been served on the City of New York as of the filing date of the motion. See LaMonte v. County of Broome, 20 AD3d 756.[1]

---

[1] Courtesy copies of these Notices of Claims with updated attorney information were served on the City of New

63.     As to the infants, I.K. and R.K., their proposed Notices of Claim were served on the City on or about June 18, 2014, as Exhibit L, in Plaintiff / Petitioners' Motion to Reargue/Renew and Amend Petition to File a Late Notice of Claim.

64.     Additional Notices of Claim were filed on behalf of the infants on or about November 8, 2015 at the Office of Corporation Counsel. I.K.'s Notice was given a PI# of 2015PI031433, and R.K.s PI # was 2015PI031444.

65.     More than thirty days have elapsed since the Notices of Claims were served upon the City of New York. New York City and its Comptroller have failed, neglected and refused to pay, settle, compromise or adjust the claim of the Plaintiffs herein.

66.     Plaintiffs have been available to submit to an inquiry concerning the justness of his claims as provided by § 50-H of the General Municipal Law.

67.     Plaintiffs have duly complied with all of the conditions precedent to the commencement of this cause of action. This action has been commenced within one year and 90 days after Plaintiffs' various causes of action have accrued.

**FIRST CAUSE OF ACTION FOR**
**VIOLATION OF CIVIL RIGHTS**
(False Arrest as to both plaintiffs)

68. Plaintiff reiterates and realleges the facts stated in the preceding paragraphs as if stated fully herein.

69. As a result of their actions. Defendants, under "color of law", deprived plaintiffs of their right to freedom from deprivation of liberty without due process of law in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

70.     Defendant Avalos, acting under "color of law", as R.A.'s purported "domestic violence officer", manipulated R.A. into first obtaining an Order of Protection against M.K., and then convincing R.A. to have M.K. arrested for allegedly violating the Order.

York on October 26, 2015

71.     In or about October, 2012, M.K. was arrested due to Harold Avalos's urging of R.A. to have M.K. arrested.

72.     Having stoked the anger of M.K., Harold Avalos then set the wheels in motion to have R.A. arrested.

73.     First, Harold Avalos convinced R.A. to obtain a Third-Party Order of Protection against M.K. which to prevent M.K.'s family from contacting R.A. They had been trying to smooth things over between R.A. and M.K..

74.     R.A. obtained the Third-Party Order of Protection, and Harold Avalos personally picked it up from her at her home. He then served it upon M.K., which he was not supposed to do because he was not a Domestic Violence Officer.

75.     On that date, in October, 2012, Harold Avalos spoke to M.K. and commiserated with him over his situation with R.A. He told M.K. that he too had been the subject of a domestic violence complaint. He told M.K. that the best way to get back at R.A. was to have her arrested.

76.     It was on that date in October, 2012 that Harold Avalos convinced M.K. to file a police report of theft by R.A., but he convinced M.K. to omit that the value of the property was over $1,000 as his intention was to only have R.A. arrested for a misdemeanor petty larceny.

77.     Shortly after taking said complaint, Harold Avalos contacted R.A. and told her that unfortunately she was going to be arrested based upon M.K.'s allegations, but that he would help her get through the booking process faster. He told her it was imperative that he talk to her in person.

78.     It was during this next meeting on or about November 11, 2012 that he first took R.A. to a motel and was unsuccessful in his sexual advances on her.

79.     A few days later R.A. was arrested and charged with petty larceny.

80.     Then, less than a month later Harold Avalos convinced R.A. to go out with him on her birthday and got her so drunk and possibly drugged so that she does not recall how she ended up in a motel room with Avalos. The first thing she recalls other than drinking at a bar and getting into a

taxicab is waking up naked at the motel where she observed vomit on the bathroom floor.

81.     When she confronted Avalos and told him she did not want to be there with him, he told her to shut up and showed her photos and told her that he has a video of them having sex. He threatened her if she told anyone he would put the video on the internet and make her famous.

82.     Over the next five months, Harold Avalos used the existence of the photos and video as leverage to prevent R.A. from reporting him to the police.

83.     During this time, not only did Avalos convince R.A. to have M.K. arrested two more times, but it also led to M.K. making more complaints against R.A.

84.     Avalos's actions from October, 2012 throughout the entire ordeal were done under "color of law" and he took advantage of his position of authority to insinuate himself in Plaintiff's lives  and subjected them to the trials and tribulations of the criminal justice system, which included deprivation of their liberty and restrictions on their ability to repair their relationship.

85.     Furthermore, Avalos scared R.A. into obtaining the Order of Protection against M.K. which led to starting a case in family Court and to a Family Court Order prohibiting M.K. from seeing his two minor children for many months.

86.   Defendant subjected Plaintiffs to these deprivations of their rights either maliciously or by acting with a reckless disregard for whether Plaintiffs' rights would be violated by his actions.

87. As a direct and proximate result of the acts of Defendant Avalos, Plaintiffs and their two minor children suffered emotional and physical injuries, endured great pain and mental suffering, and were deprived of their physical liberty and otherwise had their liberty interests significantly restricted.

**SECOND CAUSE OF ACTION**
**FOR VIOLATION OF CIVIL RIGHTS**
**(Monell Claim as to all Plaintiffs)**

88. Plaintiff reiterates and realleges the facts stated in the preceding paragraphs as if stated fully herein.

89. Defendant City and N.Y.P.D., through The N.Y.C. Police Commissioner, as a municipal policymaker, in the hiring, training and supervision of the Defendant officers, have pursued a policy and custom of deliberate indifference to the rights of persons in their domain, and Plaintiffs, violating Plaintiffs' rights to freedom from deprivation of liberty without due process of law in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. 1983.

90.     Prior to these incidents with plaintiffs the City of New York was aware or should have been aware of the propensity of Officer Avalos to engage in inappropriate contact with females who had sought out the protection of the N.Y.P.D. from domestic violence.

91.     The City of New York knew or should have known that Officer Avalos had a propensity to take advantage of such vulnerable females, by manipulating them with his apparent authority and knowledge of the criminal justice system.

92.     Upon information and belief, on a number of occasions prior to the incidents with Plaintiffs, Officer Avalos had engaged in inappropriate encounters with members of the public in his role as a New York City Police Officer.

a)      In the case of Cruz, et al. v City of New York and Harold Avalos, et al., 10 CV 5961 (EDNY), the City of New York was made aware of allegations of sexual improprieties committed by Officer Avalos. In that case, he was investigated by the Internal Affairs Unit in 2009. (IAB # 09-57188). In Cruz, Levi Velez went to the precinct to make a domestic violence complaint against her husband. Officer Avalos took her complaint, but also took her phone number, and over the next few weeks befriended Ms. Velez, and convinced her to have her husband arrested, while simultaneously starting a personal; relationship with her. Ms. Velez has now stated under oath that she believes Officer Avalos drugged her and had sex with her. While Ms. Velez did not tell that to police investigators, the evidence will show that the City of New York was on notice that Harold Avalos was abusing his position of trust by initiating relationships with vulnerable women. In

Avalos' deposition in the <u>Cruz</u> case, he admitted to giving out his cell phone number to various complainants, although he did it with both males as well as females. However, he was unable to provide counsel with the names of any males that he had given out his number.

Even more significantly, his deposition testimony in the <u>Cruz</u> case was inconsistent with his sworn statements made to Internal Affairs in their investigation on material matters. On April 14, 2011, Avalos told Internal Affairs that he had never contacted Ms. Velez after the original walk-in complaint at the precinct. But, in his deposition of June 13, 2012, Officer Avalos admitted that he had numerous phone conversations with Ms. Velez after the initial meeting. He even admitted to plugging her name into his cell phone as a contact. These facts and discrepancies were more than enough to put the City of New York on notice that they employed a dishonest individual, one who had lied to them during their investigation, and should have alerted them to the possibility that he was a dangerous sexual predator as well.

b)      The personnel file of Officer Avalos shows that he has been the subject of numerous other allegations of misconduct, typically involving women.  As far back as 2005, Officer Avalos was involved in a domestic violence incident with his wife.

c)      Avalos' personnel file states that in January, 2007, Officer Avalos was accused by a man of interfering during a conversation with his wife. According to the man, Avalos told them to stop arguing or he would have to do something to them.

d)      Additionally, Avalos' personnel file includes an allegation that in November, 2007, a man complained that Avalos kept his family at a car stop for over 90 minutes for no legitimate reason.

e)      Avalos' personnel file also states that again in 2008, Avalos' wife accused him of harassing her over the telephone, and refusing to let her speak to their daughter.

f)      Avalos' personnel file also shows that in 2009 Avalos was the subject of

another complaint alleging misconduct against a civilian as well as the complaint by the husband of Levi Velez that Avalos had engaged in a sexual relationship with his wife (Exhibit 3).

g)      Avalos' personnel file includes another civilian complaint was made against Avalos in December, 2009.

h)      In that same month, Avalos' former girlfriend accused him of stealing her property, and then 10 days later of menacing her with a gun.

i)      Lastly, in 2011, a man complained that Officer Avalos was outside his door, requesting that the man's wife come to the door. An investigation revealed that Avalos was dating this woman, and that it was the complainant's ex-wife.

93.      The existence of multiple allegations against Avalos as well as the nature of the allegations certainly establish a good faith basis for Plaintiffs to allege a policy and practice of "deliberate indifference" to the rights of people in the community which allowed Officer Avalos to remain on the police force notwithstanding the credible evidence that he was unfit to be an officer.

94.      Not only has the City of New York and the N.Y.P.D. demonstrated "deliberate indifference" when it came to the management of Officer Avalos, the City has also fostered a climate of "deliberate indifference" which has permeated the entire New York City Police Force and which has directly led to other instances of sexual misconduct by other police officers over the years.

95.      Upon information and belief, the following instances of alleged sexual misconduct have been perpetrated by members of the N.Y.P.D.

September 2015: Woman files federal lawsuit after reporting a sexual assault and subsequently being sexually assaulted by one of the NYPD officers assigned to investigate the case she reported: http://www.nydailynews.com/new-york/rape-victim-sues-city-charges-nypd-detectives-drunk-article-1.2380000

August 2015: Officer convicted for offering to help woman with her job application to the NYPD in exchange for sex and $1000: http://www.nydailynews.com/new-york/nyc-crime/solicited-sex-recruit-hides-mask-court-article-1.2323603

June 2015: Lawsuit filed against NYPD after officer allegedly sexually harassed a woman during a gun search (see attached brief—Sutton case).

May 2015: City pays $45,000 settlement to a 17-year-old who filed a federal lawsuit after being arrested by officer Jose Peinan after she refused his sexual advances:http://nypost.com/2015/06/02/teen-busted-after-refusing-cops-advances-gets-45k-from-city/

June 2015: Officer Luis Guttierez is convicted of trying to pay a minor for sex while he was on duty: http://www.amny.com/news/nypd-officer-convicted-of-offering-money-in-exchange-for-sex-to-undercover-detectives-1.10596475

May 2015: Woman files federal lawsuit against NYPD after being illegally stopped and sexually harassed—the officer also allegedly stole intimate photos from her cell phone, which he'd confiscated temporarily: http://www.nydailynews.com/new-york/queens/nypd-facing-suit-receiving-nude-pics-prisoner-article-1.1810791

June 2014: 31-year-old Bronx woman sues the city in federal court after she says officer Carlos Becker sexually assaulted her during a traffic stop and later allegedly drugged and raped her. http://www.nydailynews.com/new-york/alleged-false-arrest-leads-150m-lawsuit-city-article-1.1819114

96.     Upon information and belief, the City of New York acted with deliberate indifference by having a pattern and practice of ignoring or making light of instances of police officers' attempted solicitations of females that they interacted with while on the job.

97.     The City and N.Y.P.D.'s implicit acceptance of such inappropriate conduct by members of the force fostered a dangerous and predatory environment in which such attempts at enticing women into relationships was allowed to occur with impunity.

98.     The City's decision to allow Officer Avalos to remain on the force, dealing with the public, and more specifically female victims of domestic abuse without any reasonable attempts at curtailing his and others attempts at seeking female companionship while on the job rose to the level of "deliberate indifference", thus constituting violations of R.A.'s federal civil rights.

99.     These failures directly led to the physical and mental abuses perpetrated by Officer Avalos on R.A. and M.K.

100.    As a direct and proximate result of the aforementioned policy and custom of deliberate

indifference of Defendants City and N.Y.P.D., Defendant officers committed the unlawful acts referred to above. Thus, Defendant City is liable for Plaintiffs' injuries.

**THIRD CAUSE OF ACTION**
**<u>FOR VIOLATION OF CIVIL RIGHTS</u>**
**(Malicious Prosecution as to all Plaintiffs)**

101.    Plaintiff reiterates and realleges the facts stated in the preceding paragraphs as if stated fully herein.

102.    The actions of Defendant Avalos herein constituted malicious prosecution of plaintiffs in that he was the individual who orchestrated the criminal prosecutions of each plaintiff by manipulating the other spouse to have the other arrested.

103.    The machinations by Avalos included the planting in each plaintiff's mind the idea of having the other arrested, and included prodding, urging and even the suggesting the creation of outright lies accusing the other of criminality.

104.    Absent these improper actions of Avalos each plaintiff would not have been subjected to these various prosecutions.

105.    These various prosecutions were done absent probable cause, and were initiated and put into motion by Officer Avalos in bad faith with malicious intent.

106.    These various prosecutions were ultimately resolved in favor of the plaintiffs.

107.    During the time period that these prosecutions went on, each plaintiff was caused to suffer a deprivation to their liberty interests, such that at times they were denied the right to live with or visit their minor children, due to the existence of Orders of Protection that required them to stay away from their children.

108.    Additionally, the Plaintiffs suffered deprivation of liberty in that their marriage was placed into further discord and they were forced to live separate and apart which would not have occurred absent Officer Avalos' improper actions.

109.     Consequently, due to these and other related deprivations, the malicious prosecutions by Officer Avalos rose to a level such as to constitute a deprivation of a protected liberty interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
## ON BEHALF OF R.A. FOR BATTERY

102.     Plaintiffs repeat, reiterate and realleges each and every allegation contained in prior paragraphs with the same force and effect as is more fully and at length set forth herein.

103.     Plaintiff R.A. was subjected to unconsented, harmful touching by the defendant, on at least two occasions, in that defendant first unlawfully tried to kiss R.A. on or about November 11, 2012

104.     Then, on or about December 3, 2012, defendant Avalos had nonconsensual sex with R.A. after plying her with alcohol, and then approximately two months later he again had nonconsensual sex with R.A. when she met with him at the motel where he had promised to delete the photos and videos.

105.     As a result plaintiff suffered serious harms.

106.     Plaintiff R.A. has been harmed both physically and mentally and to this day continues to suffer said harms, including but not limited to feelings of shame and humiliation, fear of having contracted a sexually transmitted disease and various other emotional harms.

## AS AND FOR A FIFTH CAUSE OF ACTION ON
## BEHALF OF R.A. and M.K. FOR BATTERY

107.     Plaintiffs repeat, reiterate and realleges each and every allegation contained in prior paragraphs with the same force and effect as is more fully and at length set forth herein.

108.     Plaintiffs R.A. and M.K. have been subjected to assaults by the defendant, who threatened them with imminent offensive unconsented touching on the occasions described above.

109.     As a result plaintiffs suffered serious harms.

110.     Plaintiffs have suffered harmed emotionally and to this day continue to suffer said harms, including but not limited to feelings of shame and humiliation, fear of further threats and physical harm, as well as various other emotional harms.

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS**
**FOR INTENTIONAL AND/OR NEGLIGENT  INFLICTION OF EMOTIONAL DISTRESS**

111.    Plaintiffs repeat, reiterate and realleges each and every allegation contained in prior paragraphs with the same force and effect as is more fully and at length set forth herein.

112.    Plaintiffs have been subjected to severe emotional distress by the defendant, who engaged in a Machiavellian plan to insinuate himself into the R.A.'s life in order to have sexual relations with R.A.

113.    Defendant Avalos engineered this plot with the knowledge that each plaintiff was likely to suffer severe emotional harm as a result, yet continued in his twisted actions, thereby causing said harms to each plaintiff.

114.    Avalos' actions were done either with the intention to cause plaintiffs emotional distress or with the reckless disregard of whether plaintiffs would suffer said harms.

115.    As a result plaintiffs suffered serious harms.

116.    Plaintiffs have suffered severe emotional harm and to this day continue to suffer said harms, including but not limited to feelings of shame and humiliation, fear of further threats and physical harm, fear of abandonment and lack of self-worth, as well as various other emotional harms.

**AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF**
**PLAINTIFFS R.A. AND M.K. FOR ASSAULT**

117.    Plaintiffs repeat, reiterate and realleges each and every allegation contained in prior paragraphs with the same force and effect as is more fully and at length set forth herein.

118.    Plaintiffs have been subjected to assault by the defendant, who engaged in a Machiavellian plan to insinuate himself into the life of R.A. with the intention of having sexual relations with R.A.

119.    Defendant Avalos engineered this plot with the knowledge that each plaintiff was likely to suffer severe harm as a result, yet continued in his twisted actions, thereby causing said harms to each plaintiff.

120.    Avalos' actions were done either with the intention to cause plaintiffs emotional distress or with the reckless disregard of whether plaintiffs would suffer said harms.

121.    As a result plaintiffs suffered serious harms.

122.    Plaintiffs have suffered severe emotional harm and to this day continue to suffer said harms, including but not limited to feelings of shame and humiliation, fear of further threats and physical harm, fear of abandonment and lack of self-worth, as well as various other emotional harms.

## AS AND FOR AN EIGHTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS FOR NEGLIGENT HIRING, RETAINING AND TRAINING

123.    Plaintiffs repeat, reiterate and realleges each and every allegation contained in prior paragraphs with the same force and effect as is more fully and at length set forth herein.

124.    Defendant City of New York was on notice of Officer Avalos' conduct similar in nature to that allegation against plaintiffs and failed to take appropriate action in response

125.    Defendant's failure to correct or effectively address the officer's behavior led directly to plaintiffs' harms.

126.    As a result of defendants' actions, plaintiffs suffered serious harms.

## AS AND FOR A NINTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS FOR NEGLIGENT SUPERVISION

127.    Plaintiffs repeat, reiterate and realleges each and every allegation contained in prior paragraphs with the same force and effect as is more fully and at length set forth herein.

128.    Defendant City of New York was on notice of Officer Avalos' conduct similar in nature to that allegation against plaintiffs and failed to properly supervise the officer.

129.    Defendant's failure to properly supervise the officer's behavior led directly to plaintiffs' harms.

130.    As a result of defendants' actions, plaintiffs suffered serious harms.

**AS AND FOR A TENTH CAUSE OF ACTION ON BEHALF
OF ALL PLAINTIFFS FOR NEGLIGENT ENTRUSTMENT**

131.    Plaintiffs repeat, reiterate and realleges each and every allegation contained in prior

paragraphs with the same force and effect as is more fully and at length set forth herein.

132.    Defendant City of New York was on notice of Officer Avalos' conduct similar in nature to

that allegation against plaintiffs and improperly allowed the officer to carry a gun and shield in spite of its

knowledge of his dangerous propensity.

133.    Defendant's failures led directly to plaintiffs' harms.

134.    As a result of defendants' actions, plaintiffs suffered serious harms.


**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court:

1. Enter a judgment that defendants, by their actions, violated Plaintiffs' rights under state law,

and violated Plaintiffs rights under the Fourth and Fourteenth Amendments to the

Constitution; and,

2. Enter a judgment, jointly and severally against Defendant Avalos and The City of New

York for compensatory damages in an amount to be determined at trial; and,

3. Enter a judgment, jointly and severally against the Defendant officer and The City of New

York for punitive damages in an amount to be determined at trial; and,

4. Enter an Order:

a) Awarding plaintiff's reasonable attorney's fees and litigation expenses pursuant to

42 U.S.C. § 1988;

b) Granting such other and further relief which to the Court seems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: New York, New York
March 28, 2016

RESPECTFULLY,

/s/

STEVEN A. HOFFNER, ESQ.
Attorney for the Plaintiffs
325 Broadway, Suite 505
New York, New York 10007
Tel:     (212) 941-8330
Fax:     (646)810-4031
sahoffner@aol.com

<u>VERIFICATION</u>

**STEVEN A. HOFFNER,** an attorney admitted to practice in the Courts of the State of New York states:

That the affirmant is the attorney of record for the plaintiffs in the within action.

That the affirmant has read the foregoing Complaint and knows the contents thereof.

That the same is true as to affirmant's knowledge, except as to matters therein alleged to be on information and belief, and as to those matters affirmant believes them to be true.

That the reason this verification is made by affirmant is because the plaintiffs do not reside in the county wherein affirmant maintains his office.

That the grounds of my belief as to all matters not stated upon my own knowledge are as follows:

investigation, client conferences, and review of the file.

The undersigned affirms that the following statements are true, under the penalties of perjury.

Dated: New York, New York
       March 28, 2016

_____/s/_____
STEVEN A. HOFFNER, Esq.